## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RASHSHAWNDYAR GAINES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.: 25-1385-SEM-DJQ** |
| | ) | |
| | ) | |
| **JOHNATHAN MEDLOCK** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

### ORDER

**SUE E. MYERSCOUGH, U.S. District Judge:**

Plaintiff Rashshawndyar Gaines, proceeding *pro se,* is an inmate with the Illinois Department of Corrections ("IDOC") who is currently incarcerated at the IDOC's Menard Correctional Center. However, the alleged wrongs committed against Plaintiff that form the basis for this lawsuit occurred when he was housed at the IDOC's Pontiac Correctional Center ("Pontiac"). The Court granted Plaintiff leave to proceed *in forma pauperis*, and the case is now before the Court for a merit review of his claims.

Because Plaintiff is a prisoner for purposes of the Prison Litigation Reform Act, the Court is required by 28 U.S.C. § 1915A to "screen" Plaintiff's Complaint and, through such process, to identify

and dismiss any legally insufficient claim or the entire action, if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A.

In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in the Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

Plaintiff alleges that, on December 13, 2024, the TACT Team at Pontiac forcibly entered Plaintiff's cell in order to extract him. The TACT Team was comprised of Defendants Sgt. Johnathan Medlock, C/O Beau Prater, Lt. Jason Ramey, and Sgt. Timothy Propp II. During the extraction, Plaintiff alleges that Sgt. Medlock slammed Plaintiff's head onto the bed, causing injury to Plaintiff. Thereafter, all four TACT Team Members began to punch Plaintiff, and they administered bursts of pepper spray in his face. Plaintiff claims that

these actions were done to him even after Defendants were able to place him into handcuffs.

Thereafter, Defendants began to drag Plaintiff, while he was restrained, to a holding cell. Plaintiff told each TACT Team member that they had placed the restraints upon his wrists and ankles too tightly, but each ignored his complaints and requests for help. As a result, Plaintiff claims that his ankles and feet have been permanently damages by the restraints.

While he was sitting restrained in a holding cell, Lt. Jordan Pratt walked by Plaintiff's cell. Plaintiff complained to Lt. Pratt that he was in pain from the tightness of his restraints, but Lt. Pratt took no action to help him or to alleviate his pain. Plaintiff also asked Lt. Pratt for the opportunity to take a shower because he had been sprayed with pepper spray during his extraction from his cell, but Lt. Pratt refused Plaintiff's request.

Two hours later, Sgt. Medlock, C/O Prater, Lt. Ramey, and Sgt. Propp escorted Plaintiff to a cell that had been condemned and left him there. The cell was full of garbage, was covered in dried blood and feces, and had no running water. Plaintiff was stripped of his clothing and was not provided with a blanket or any new

clothing, even though the cell was frigid given the fact that it was December.

The next day, Defendant Sgt. Ivan Perez came to Plaintiff's cell and observed the horrendous conditions in which Plaintiff was living. Sgt. Perez also witnessed Plaintiff's need for medical attention. However, Sgt. Perez took no actions to help Plaintiff. Plaintiff alleges that he remained in this cell for five days until he was finally able to take a shower. Plaintiff claims that he has sustained lasting health issues as a result of this incident.

Plaintiff's Complaint states five claims: (1) an excessive force claim in violation of his Eighth Amendment rights against Defendants Sgt. Johnathan Medlock, C/O Beau Prater, Lt. Jason Ramey, and Sgt. Timothy Propp II based upon the alleged unconstitutional force used while extracting Plaintiff from his cell; (2) an excessive force claim in violation of his Eighth Amendment rights against Defendants Sgt. Johnathan Medlock, C/O Beau Prater, Lt. Jason Ramey, and Sgt. Timothy Propp II based upon purposefully placing the restraints upon Plaintiff in a manner that injured him; (3) a failure to intervene or to protect claim in violation of his Eighth Amendment rights against Defendants Lt. Jordan

Pratt and Sgt. Ivan Perez; (4) a claim of deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights against all named Defendants; and (5) a violation of his Eighth Amendment rights based upon the conditions of his confinement in the unsanitary cell against all named Defendants.

**IT IS, THEREFORE, ORDERED:**

1.      Pursuant to its merit review of Plaintiff's Complaint under 28 U.S.C. § 1915A, the Court finds that the Complaint states five claims: (1) an excessive force claim in violation of his Eighth Amendment rights against Defendants Sgt. Johnathan Medlock, C/O Beau Prater, Lt. Jason Ramey, and Sgt. Timothy Propp II based upon the alleged unconstitutional force used while extracting Plaintiff from his cell; (2) an excessive force claim in violation of his Eighth Amendment rights against Defendants Sgt. Johnathan Medlock, C/O Beau Prater, Lt. Jason Ramey, and Sgt. Timothy Propp II based upon purposefully placing the restraints upon Plaintiff in a manner that injured him; (3) a failure to intervene or to protect claim in violation of his Eighth Amendment rights against Defendants Lt. Jordan Pratt and Sgt. Ivan Perez; (4) a claim of deliberate indifference to his serious medical needs in violation of

his Eighth Amendment rights against all named Defendants; and (5)

a violation of his Eighth Amendment rights based upon the

conditions of his confinement in the unsanitary cell against all

named Defendants. Any additional claims shall not be included in

the case except at the Court's discretion and on a motion by a party

for good cause shown or pursuant to Federal Rule of Civil Procedure

15.

2.    The Clerk of the Court is directed to effect service of

process upon all named Defendants pursuant to the Court's

standard procedures.

3.    This case is now in the process of service. Plaintiff is

advised to wait until counsel has appeared for Defendants before

filing any motions, in order to give Defendants notice and an

opportunity to respond to those motions. Motions filed before

Defendants' counsel has filed an appearance will generally be

denied as premature. Plaintiff need not submit any evidence to the

Court at this time unless otherwise directed by the Court.

4.    The Court will attempt service on Defendants by mailing

a waiver of service to them. Defendants have sixty (60) days from

the date that the waiver is sent to file an answer. If Defendants have

not filed an answer or appeared through counsel within ninety (90)

days of the entry of this Order, Plaintiff may file a motion requesting

the status of service. After Defendants have been served, the Court

will enter an Order setting discovery and dispositive motion

deadlines.

5.    With respect to a Defendant who no longer works at the

address provided by Plaintiff, the entity for whom that Defendant

worked while at that address shall provide to the Clerk said

Defendant's current work address, or, if not known, said

Defendant's forwarding address. This information shall be used

only for effectuating service. Documentation of forwarding

addresses shall be retained only by the Clerk and shall not be

maintained in the public docket nor disclosed by the Clerk.

6.    Defendants shall file an answer within sixty (60) days of

the date that the waiver is sent by the Clerk. A motion to dismiss is

not an answer. The answer should include all defenses appropriate

under the Federal Rules. The answer and subsequent pleadings

shall be to the issues and claims stated in this opinion. In general,

an answer sets forth Defendants' positions. The Court does not rule

on the merits of those positions unless and until a motion is filed by

a Defendant. Therefore, no response to the answer is necessary or will be considered.

7.    This District uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to defense counsel copies of motions and other papers that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel. Discovery does not begin until defense counsel has filed an appearance and the court has entered a Scheduling Order, which will explain the discovery process in more detail.

8.    Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

9.    Plaintiff shall immediately notify the court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

10.    If a Defendant fails to sign and return a waiver of service to the Clerk within thirty (30) days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshal Service on that Defendant and will require that Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

11.    The Clerk of the Court is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Entered this 5th day of November, 2025

s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE